## TRAD et al. v. CALIFA.
### No. 9147.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 18, 1933.

Rehearing Denied Nov. 15, 1933.

O. C. Aldrich, of Edinburg, and Kirk R. Mallory, of McAllen, for appellants.

Perkins & Floyd, of Alice, for appellee.

FLY, Chief Justice.

This suit was instituted by appellee, Elias Califa, against D. Trad, Rosa Trad, and Antonio Trad, to recover of them on five promissory notes, each for the sum of $1,000, and each bearing interest at the rate of 6½ per cent. per annum from date, April 7, 1930; the notes were payable, respectively, in one, two, three, four, and five years, and it was agreed in them that the failure to pay any installment of interest on any note would, at the option of the holder, cause all of the notes to become due for the sum therein specified. Said notes were secured by a deed of trust lien and were signed by D. Trad and Rosa Trad. After the execution of said notes and deed of trust lien, D. Trad and Rosa Trad conveyed the property covered by said lien to Antonio Trad and foreclosure was prayed for as against him. We adopt the findings of fact of the trial court as the conclusions of this court as follows:

"By deed dated February 28, 1930, filed for record in the office of the county clerk of Hidalgo county on March 4, 1930, the defendant D. Trad acquired title to lots 11 and 12 in block 10, of the city of McAllen, the consideration in such deed reciting $10 and other considerations in hand paid as follows: 'Cash in hand paid, the receipt of which is hereby acknowledged.'

"The defendant D. Trad testified that he received this property in exchange for other property that he was then using as his homestead, but no deed from the defendant D. Trad to Claudio Chapa, Jr., (the grantor in the deed to D. Trad to lots 11 and 12 in block 10 above), was offered in evidence. In view of the other testimony offered upon the trial, the court finds that said lots 11 and 12 in block 10 of the city of McAllen were not impressed with a homestead character by reason of an exchange of a homestead for it.

"(3) On April 6, 1930, the defendant D. Trad made a trip from his residence in McAllen to Falfurrias, Tex., the home of the plaintiff, Elias Califa, and made an application to the said plaintiff, Elias Califa, for a loan of $5,000, stating that he desired to build a brick building upon lots 11 and 12, in block 10 of the city of McAllen, to be used as rental property, and stated further that he had tentatively made a contract with one Guadalupe Martinez for five years upon onehalf of said building at a rental of $75 per month. The plaintiff, Elias Califa, in considering the matter, interviewed one J. W. Wilson, a practicing attorney at law of Falfurrias, Tex.

"(4) On April 7, 1930, the plaintiff and the defendant D. Trad and the other defendant Antonio Trad went to the office of the said J. W. Wilson in Falfurrias and explained to him their plans with reference to said loan and the construction of the said building, and the said J. W. Wilson made inquiry of them as to whether or not the property constituted the homestead of the defendant D. Trad, or whether or not it was to be used as a homestead by the said D. Trad, and explained to them if it were a homestead or was intended to be a homestead that it would be necessary to draw a mechanic's lien contract, and, if not, he could draw a deed of trust. The defendant D. Trad then stated that the property was not his homestead and that he did not intend to use it as a homestead, but that it was to be constructed for the purpose of rental property, and that he (the defendant D. Trad) owned other property in the city of McAllen, Hidalgo county, Tex., which he was then using as his homestead and which he claimed as his homestead.

"(5) The five notes for $1,000 each and a deed of trust upon lots 11 and 12 in block 10, city of McAllen, being the deed of trust and notes sued upon in this case, were then prepared and executed by the defendant D. Trad and delivered to Antonio Trad to be carried to McAllen, Tex., to be executed by the defendant Rosa Trad, who is the wife of the defendant D. Trad.

"(6) That the plaintiff, Elias Califa, relied upon the representations made by the defendant D. Trad that the property upon which the deed of trust was given was not his homestead when he parted with his consideration for the notes and lien thereon, and if said property were then impressed with a homestead character by receiving the same in exchange for other property then used as a homestead, the plaintiff had neither actual nor constructive knowledge thereof.

"(7) That the defendant Antonio Trad, in company with the defendant D. Trad, on or about April 8, 1930, made a trip to McAllen, Tex., and obtained the signature of the defendant Rosa Trad to the notes sued upon herein, and her signature and acknowledgment to the deed of trust securing said notes. The notes were then delivered to the plaintiff, the deed of trust placed of record, and the $5,000 paid over to the defendant D. Trad.

"(8) If the acknowledgment of the defendant Rosa Trad were not properly taken, as contended by the defendants, neither the defendant Antonio Trad nor the plaintiff, Elias Califa, had any knowledge thereof, but the court finds that said acknowledgment was properly taken, as required by law.

"(9) At the time said notes and the deed of trust were executed and delivered to plaintiff and at the time plaintiff paid over his $5,000 to said D. Trad in consideration of said notes and lien, the defendant D. Trad and family were not and had not been living upon the said lots 11 and 12 in block 10 of the city of McAllen.

"(10) That the defendant D. Trad filed a voluntary petition in bankruptcy on April 29, 1932, in the District Court of the United States for the Southern District of Texas, Brownsville Division, and received a discharge from all of his provable debts on August 17, 1932. That in the schedules in bankruptcy filed by the defendant D. Trad in said bankrupt court, the defendant D. Trad listed the indebtedness due the plaintiff herein as a secured claim upon lots 11 and 12 in block 10 of the city of McAllen, and claimed the said property as exempt to him as a homestead under the Constitution and laws of the state of Texas. That thereafter on or about May 21, 1932, the defendant D. Trad amended his schedules in bankruptcy and omitted lot 11 in block 10, and thereafter said lot 12 in block 10 was set apart to the defendant D. Trad in bankrupt court as his homestead.

"(11) That said five notes being a series of notes and providing for accelerated maturity upon failure to pay one or more of said notes at maturity, or any annual interest payment thereon, and notes 1 and 2 being due and unpaid, and the annual interest being due and unpaid, plaintiff exercised his option provided for in said notes and declared them all due and mature."

■ The evidence clearly showed that appellants had a homestead at the time they obtained the loan and gave the deed of trust. That homestead was upon a lot in another part of town and not near lots 11 and 12. There is nothing in the record that tends to show that the old homestead was ever disposed of or that any effort was made to dispose of it. Appellants were living in it and they made no claim to any other homestead at the time D. Trad was negotiating with Antonio Trad for the loan. He told Antonio Trad that he wanted to borrow the money to build a house for two stores which he intended to rent and never claimed that he intended to make the place his homestead. The attorney for the appellee, J. W. Wilson, was informed by D. Trad that he had a homestead and that he was living in the same. The evidence fails to show that lots 11 and 12 were ever designated as the homestead of appellants and the only claim was that they intended some time in the future to make it a homestead. The house now claimed by appellants as their homestead had not been erected and was not capable of being designated as a homestead; and it was erected with the money obtained from appellee. The evidence seems to indicate that the designation of the house erected with the money borrowed was conceived after it had been erected, and such conception appears to have been created in order to defeat the payment of money borrowed and used by appellants.

■ If it be true that appellants had any intention whatever to make a homestead of lots 11 and 12, such intention was not accompanied by any active efforts going to show a present intention to make the lots a homestead. The only act claimed to have been performed was the moving of three pieces of furniture into a little building in the back part of lot 12, not connected with the house which was afterwards erected, prior to the loan. No active preparations had been made to move from the old homestead to the old building which was standing where the new building was afterwards erected. The intention was disclaimed in the deed of trust given to secure the loan, but if it had not been, a mere intention, unaccompanied by active steps to convert the property into homestead, would not constitute the property homestead. Without the intention to make a piece of property a homestead there could be no homestead; intention is always essential; but the intention alone will not convert property into a homestead unless such intention is accompanied by active efforts to carry the intention into effect in good faith. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

The judgment will be affirmed.